UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 1:21-cr-0069-JMB
        Case No. 1:20-cr-0189-JMB
        Hon. Jane M. Beckering
        United States District Judge

DENNIS LYNN CARTWRIGHT, et al

        Defendant.
_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES the defendant by and through his attorney, Richard E. Zambon, PLLC, and for his sentencing memorandum says as follows:

Counsel and defendant have reviewed the final presentence investigation report and raise the following issues and objections to the report:

**THE DEFENDANT OBJECTS TO THE 2-LEVEL
ENHANCEMENT FOR OBSTRUCTION OF JUSTICE**

Mr. Cartwright objects to the enhancement for Obstruction of Justice contained in ¶¶119 & 131of the PSI Report alleging he committed perjury when he testified at trial.

To prove perjury, the government is required to show that defendant testified under oath about material matters, that testimony was false, that defendant knew testimony was false, and that defendant gave testimony voluntarily and intentionally. *U.S. v. Swink*, C.A.8 (Ark.) 1994, 21 F.3d 852, rehearing denied. Two essential elements of proof in perjury cases are that statements made by defendant must be proved false and it must be proved that defendant did not believe those statements to be true. *U.S. v. Hagart*y, C.A.7 (Ill.) 1968, 388 F.2d 713. Perjury

1

must be shown by clear, convincing, and direct evidence to a moral certainty and beyond reasonable doubt that defendant committed willful and corrupt perjury. *U.S. v. Brandyberry*, C.A.9 (Cal.) 1971, 438 F.2d 226, certiorari denied 92 S.Ct. 138, 404 U.S. 842, 30 L.Ed.2d 77.

Strict proof is necessary to justify a charge of perjury. *U.S. v. Alu*, C.A.3 (N.J.) 1956, 236 F.2d 179. In order to enhance an offense level on the basis of obstruction of justice, a sentencing court must determine whether defendant testified falsely as to material fact, and willfully in order to obstruct justice, not merely inaccurately as result of confusion or faulty memory. *U.S. v. Thompson,* C.A.D.C.1992, 962 F.2d 1069, 295 U.S.App.D.C. 277, certiorari denied 113 S.Ct. 1418, 507 U.S. 974, 122 L.Ed.2d 788.

The mere fact that there was sharp conflict in direct testimony on a specific point does not itself establish a perjury or which of the two parties was guilty of perjury, if any. *Thomas v. Hunter*, D.C.Kan.1948, 78 F.Supp. 925, remanded on other grounds 173 F.2d 810.

Mr. Cartwright's testimony was not only exculpatory, but inculpatory as he admitted there was marijuana in his home "that came from a grow operation," PageID.1465, and that he "played a part of the grow". PageId.1465 This absolute truthful testimony more than likely helped in the jury's decision to convict him of Count 6, Possession With Intent to Distribute Marijuana.

On cross-examination Mr. Cartwright continued to testify truthfully, and in an inculpatory manner, when he admitted he knew there was marijuana in his house and that he knew there were guns in the office across the hall from his. PageId.1478, and PageID.1531. This inculpatory testimony more than likely assisted the jury in its decision to convict him of the charge contained in Count 5, Felon in Possession of a Firearm.

The jury was left to convict or acquit the defendant of the charges contained in Counts 1, 4, 5 and 6, 7 and 8. As the Court is aware, Mr. Cartwright was convicted of Counts 1, 4, 5 and 6 but was acquitted of Counts 7 and 8. No one is privy to the jury's decision or the rationale for the way the jury reached its decisions or what evidence the jury considered, or which witnesses the jury believed or disbelieved.

The defendant absolutely disagrees with the statement in ¶119 that, "He also testified he had no knowledge of the firearms located inside his home". This statement is in complete contradiction to his testimony at trial:

DIRECT EXAMINATION

Q. And you also knew that there were guns in the office across the hall from your bedroom.

A. I did.

PageID.1478

CROSS-EXAMINATION

Q. And this is the office where the guns were, correct?

A. Correct.

Q. And you knew the guns were there, correct?

A. Yes.

PageID.1531

The defendant further disagrees with the conclusion in ¶119 that because the defendant testified and yet was convicted that, "Hence, the jury determined Mr. Cartwright testified falsely."

3

Disagreeing with the testimony of certain witnesses does not necessarily mean that one witness lied or not. The defendant merely disagreed with the testimony of certain witnesses such as Agent Singer about her financial analysis of certain books and record. PageId.1477. The mere fact that there was sharp conflict in direct testimony on a specific point does not itself establish a perjury or which of the two parties was guilty of perjury, if any.  *Thomas v. Hunter*, D.C. Kans.(1948), 78 F.Supp. 925, remanded on other grounds 173 F.2d 810.

In its sentencing memorandum the government argues the defendant is guilty of obstructing justice because the defendant testified and because he was convicted of Counts 1, 4 & 5, "Hence, the jury determined the defendant testified falsely". PageID.1611

The Court is reminded that the defendant testified and was found not guilty of Counts 2 and 3. Using the prosecutor's rationale, the jury must have determined the defendant testified truthfully and the other witnesses testified untruthfully as to Counts 2 and 3.  Nothing in the record indicates why the jury found as it did, and it is mere speculation on the part of the government that the jury "determined the defendant testified falsely".

The proposed 2-level enhancement should be denied.

### THE DEFENDANT OBJECTS TO THE 2-LEVEL ENHANCEMENT FOR POSSESSING A FIREARM DURING THE COURSE OF A CONSPIRACY

The defendant objects to the 2-level enhancement set forth in ¶127 of the PSI report wherein it was found that "Mr. Cartwright possessed three firearms during the course of the conspiracy" citing USSG §2D1.1(b)(1). It is clearly improbable that Mr. Cartwright possessed the firearms "during the course of the conspiracy" as the firearms were not "connected with the offense". Mr. Cartwright's situation is akin to that exception set forth in Application note 11 of the guidelines where the enhancement is not allowed:

"The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, *had an unloaded hunting rifle in the closet*." (emphasis added)

The Sentencing Guidelines allow for a 2-level enhancement if a defendant possessed a firearm *during the course of* an enumerated offense:

### USSG §2D1.1(b)(1)

(b) Specific Offense Characteristics

(1) If a dangerous weapon (including a firearm) was possessed, increase by **2** levels.

However, this enhancement is limited by Application Note 11:

11. **Application of Subsections (b)(1) and (b)(2).—**

(A) **Application of Subsection (b)(1).—**Definitions of "*firearm*" and "*dangerous weapon*" are found in the Commentary to §1B1.1 (Application Instructions). The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. **For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.** The enhancement also applies to offenses that are referenced to §2D1.1; *see* §§2D1.2(a)(1) and(2), 2D1.5(a)(1), 2D1.6, 2D1.7(b)(1), 2D1.8, 2D1.11(c)(1), and 2D1.12(c)(1).(Emphasis added)

According to ¶47 of the report the firearms were unloaded and found in a desk drawer in the basement:

On December 1, 2020, investigators executed search warrants at Mr. Cartwright's home and business (Auto Den). Mr. Cartwright lived at the residence with his girlfriend and 4-year-old child. Investigators located approximately 9 pounds of marijuana in the basement with a digital scale. There were three unloaded firearms in a desk drawer in the basement detailed as follows:

- .380 caliber Smith & Wesson Bodyguard (serial number: LAH34048);
- Smith & Wesson 38 Special (serial number: 335173); and
- .40 caliber Smith & Wesson Springfield Model 4006TSW (serial number: TDS9123).

5

To enhance a sentence under USSG § 2D1.1(b)(1), the government must show by a preponderance of the evidence that the defendant possessed the firearm during the drug trafficking offense. *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991). Once the government satisfies its burden, "a presumption arises that such possession was connected to the offense." *Id*. Possession may be actual or constructive. *United States v. Cochran*, 14 F.3d 1128, 1132 (6th Cir. 1994). To establish constructive possession, the government must show that the defendant had "'ownership, dominion, or control' over the [firearm] or 'dominion over the premises' where the [firearm] is located." *Id*. (quoting *United States v. Snyder*, 913 F.2d 300, 304 (6th Cir. 1990)). Circumstantial evidence is sufficient to establish constructive possession. *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002).

If the government satisfies its initial burden of showing that the defendant was in possession of a weapon during the offense, then the burden shifts to the defendant to demonstrate that it was clearly improbable that the weapon was connected to the offense. *Sanchez*, 928 F.2d at 1460. If the defendant fails to make such a showing, then enhancement under USSG § 2D1.1(b)(1) is appropriate. *United States v. McGhee*, 882 F.2d 1095, 1097-98 (6th Cir. 1989). *United States v. Miggins,* 302 F.3d 384, 390-391.

It was clearly improbable that the weapon was connected to the offense because the firearms were unloaded nor was there testimony that Mr. Cartwright ever possessed the firearms during any drug transaction or in connection with any drug transaction. Additionally, the firearms were located in a desk which, based on uncontroverted testimony, belonged to Mr. Cartwright's girlfriend who was not a co-conspirator. In fact, the only testimony regarding the firearms' connection to Mr. Cartwright was Mr. Cartwright's wherein he denied the firearms

6

belonged to him or were in his possession: PageID.1463; PageID.1467; PageID.1531; PageID.1532; PageID.1533; PageID.1534; PageID.1535.

The government cannot prove constructive possession of the firearms because Mr. Cartwright did not have dominion or control over the desk in which the firearms were found. The testimony at trial established that Mr. Cartwright's girlfriend had sole use and possession of the desk and its contents.

The Court is directed to the recently decided 6th Circuit case, *United States vs Terriuntae Hammock*, No. 21-3793, November 29, 2022. Although unpublished, it is instructive on the issue of application of the 2-level enhancement for possessing a dangerous weapon pursuant to USSG 2D1.1. There the court held as follows:

> Application of the 2-level enhancement under USSG § 2D1.1(b)(1) requires the government to prove by a preponderance of the evidence (1) that the defendant actually or constructively possessed the weapon and (2) that such possession occurred during the commission of the offense or relevant conduct. Id. "In the conspiracy context, we have found that possession of a gun by one coconspirator is attributable to another coconspirator if such possession constitutes reasonably foreseeable conduct." *United States v. Barron*, 940 F.3d 903, 911-12 (6th Cir. 2019) (cleaned up). **The government must prove by a preponderance of the evidence that it was reasonably foreseeable to the defendant that a coconspirator would possess a firearm.** *United States v. Woods*, 604 F.3d 286, 290 (6th Cir. 2010) . . . (emphasis added)
>
> Even if the record showed that Hammock was standing near the wastebasket where the firearm was found, mere proximity to a firearm is not enough to establish constructive possession. See Barron, 940 F.3d at 916-17; *United States v. Arnold*, 486 F.3d 177, 183-84 (6th Cir. 2007) (en banc) . . .

As set forth above the defendant testified that the firearms were owned by his girlfriend who was not a conspirator. Even if the defendant's girlfriend were a conspirator the enhancement would not apply per *Hammock*:

> "We have explicitly rejected 'the fiction that a firearm's presence always will be foreseeable to persons participating in illegal drug transactions.'" *United States v. Catalan*, 499 F.3d 604, 607 (6th Cir. 2007) (quoting *United States v. Cochran*, 14 F.3d 1128, 1133 (6th Cir. 1994)). "Rather, at a minimum, we require that there be objective

7

evidence that the defendant knew the weapon was present, or at least knew it was reasonably probable that his coconspirator would be armed." *Cochran*, 14 F.3d at 1133.

Additionally, the firearms in this case were located near approximately 9 pounds of marijuana, which according to *Hammock*, was not "a massive amount of drugs" and therefore requires the government to prove that "the defendant expected a firearm to be present":

> We have affirmed a district court's finding that a coconspirator's possession of a firearm was reasonably foreseeable "when there are massive amounts of drugs in a single location"—i.e., "narcotics worth at least $60,000 located near the firearm." *Woods,* 604 F.3d at 291 (citing cases). "In contrast, we have been unable to affirm a finding of foreseeability when the amount of narcotics is lower." Id. Here, in addition to the handgun, the search uncovered six digital scales, $769, five grams of marijuana, 500 grams of a cutting agent, and a bag of pills. "[T]his is not a massive quantity of narcotics that, by itself, supports an inference of weapons." Id. "When there are not 'huge quantities' of narcotics near the weapon, we have insisted upon additional evidence that the defendant expected a firearm to be present." Id. (quoting *United States v. Wade*, 318 F.3d 698, 702 (6th Cir. 2003)). Such additional evidence might include "telling his companions to bring a firearm, being arrested in a room with a firearm in plain view, or being involved in drug transactions with firearms present in the past." Id. at 292 (internal citations omitted). The record is devoid of any additional evidence that Hammock knew that a firearm was present or that he expected Parks to be armed. The government merely asserted that "Mr. Parks was there," that "we found weapons with Mr. Parks on multiple occasions," and that "there's obviously drug paraphernalia there, two conspirators are there." (R. 677, Sentencing Tr., PageID 4064). The district court's conclusion—the "background information suggests that [Hammock] was using that and had access to the firearm and that it was used in some relation to this drug transaction—or drug conspiracy"—is not supported by the record. (Id., PageID 4066). In so holding, we emphasize the significant difference between the presence of a gun and possession of a gun, and we recognize the importance of holding the government to its burden."

The Court is also directed to another recently decided 6th Circuit case in which the 2-level enhancement for possession of a firearm during an offense was also denied, United States vs *Wilson,* No. 22-5068, December 6, 2022. Although also unpublished, *Wilson* stands for the proposition that in constructive possession case the government is required to prove dominion over the premises where the item (firearms) is located and that:

"This standard requires a showing of intent, and "[p]resence alone cannot show the requisite knowledge, power, or intention to exercise control." *United States v. Bailey*, 553 F.3d 940, 945 (6th Cir. 2009) (quoting *United States v. Birmley*, 529 F.2d 103, 107–08 (6th Cir. 1976)). Even "[w]here the defendant shares possession of the premises where contraband is found, additional incriminating evidence must show the defendant knew of and controlled the contraband." *United States v. Wren*, 528 F. App'x 500, 506 (6th Cir. 2013) (citing Bailey, 553 F.3d at 944 n.3).

The facts in *Wilson* were more egregious than the facts in Mr. Cartwright's case:

"On April 5, 2019, officers responding to a shoplifting call saw three individuals matching the suspects' description exiting a Ford F-150 truck. Id. ¶ 10 (Page ID #89). Austin Williams, who owned the Ford F-150, had been in the driver's seat. Id. Carrie Stephens exited the backseat of the vehicle on the passenger's side, and Wilson left from the backseat on the driver's side. Id. The police searched Wilson and found on his person 92.23 grams of meth, two Xanax bars, assorted pills, a digital scale, and $649. Id. ¶ 11 (Page ID #90). Various drugs were also found in the car and on Williams. Id. ¶¶ 10, 12 (Page ID #89–90). The police found three loaded firearms in the Ford F-150. A revolver was under the front passenger seat. Id. ¶ 12 (Page ID #90). A handgun was in the back pocket of the front passenger seat. Id. A rifle was underneath the rear seat, and Wilson had exited the vehicle from the rear seat on the driver's side. Id. ¶¶ 10, 12 (Page ID #89–90). The rifle was not visible without first lifting the seat. 1 R. 70 (Tr. at 43) (Page ID #212)."

Despite those facts, the 6th Circuit reversed the District Court's finding the sentence enhancement applied.

The defendant understands that the standard for applying a guideline application is lower than requiring the government to prove a charge beyond reasonable doubt at trial. However, *Wilson* holds that in constructive possession case "something more" is required:

"And, in Bailey, we explained that the mere fact that a firearm was underneath a driver's seat does not establish that the driver constructively possessed the firearm. 553 F.3d at 945–46. Because Bailey involved a sufficiency-of-the-evidence challenge, the government had been required to prove constructive possession beyond a reasonable doubt. But Bailey's principles apply in the sentencing-enhancement context as well. See, e.g., *United States v. Lanier*, 850 F. App'x 419, 421 (6th Cir. 2021) (relying on Bailey in a challenge to the sentencing enhancement); *United States v. Penaloza*, 648 F. App'x 508, 516 (6th Cir. 2016) (same). Thus, something more than proximity is required to show constructive possession. Bailey, 553 F.3d at 947–48" . . .

> Instead, "[o]ther incriminating evidence" such as "a 'connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise" or a "statement of ownership" is needed in combination with proximity to show constructive possession. *Vichitvongsa*, 819 F.3d at 276 (quoting *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008)). . .
> Instead, "[o]ther incriminating evidence" such as "a 'connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise" or a "statement of ownership" is needed in combination with proximity to show constructive possession. *Vichitvongsa,* 819 F.3d at 276 (quoting *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008)).

The 6th Circuit denied the enhancement in *Wilson* despite the fact that "the rifle was in "reaching distance" of Wilson, and despite the fact of the presence of "drugs and paraphernalia in the Ford F-150" and despite that "the drugs the drugs and related paraphernalia were recovered from Wilson's person, and from under the front passenger's seat, on the opposite side of the vehicle from where Wilson was sitting".

*Wilson* held that:

> "proving possession through another individual still requires a showing that the defendant "exercise[s] dominion and control **over the firearm**." *Vichitvongsa*, 819 F.3d at 275 (quoting *Campbell*, 549 F.3d at 374). More evidence is needed to demonstrate possession through another individual than exists here." (emphasis added)

Mr. Cartwright was acquitted of the 924(c) Count, and understands that current precedent prevents his challenge to the use of acquitted conduct as a basis for his Guidelines sentence enhancement, *United States v. White*, 503 F.3d 487, 2007 U.S. App. LEXIS 23349 (6th Cir.) (6th Cir. Ky., 2007) *United States v. Cook*, 550 Fed. Appx. 265, *United States v. McShan*, 757 Fed. Appx. 454. However, Mr. Cartwright notes that the issue of using acquitted conduct for Guideline enhancement purposes is likely to come before the United States Supreme Court again and again as in *Osby v. United States*, 2021 U.S. LEXIS 4238 United States Supreme Court, decided October 4, 2021, No 20-1693, and preserves this issue for appeal.

Additionally, in order to apply the 2-level enhancement the government must prove that not only was a firearm "possessed", but it must also be proved to be a "dangerous weapon":

**(b)** Specific Offense Characteristics
**(1)** If a *dangerous weapon* (including a firearm) was possessed, increase by 2 levels.

An unloaded firearm is not, per se, a dangerous weapon.

For all of the above reasons, the defendant contends the there is a lack of sufficient evidence to apply the 2-level enhancement for possessing a firearm during the course of the drug conspiracy and the enhancement should be denied.

### THE DEFENDANT OBJECTS TO THE TWO-LEVEL ENHANCEMENT FOR MAINTAINING A PREMISES FOR THE PURPOSE OF MANUFACTURING OR DISTRIBUTING A CONTROLLED SUBSTANCE PURSUANT TO USSG2D1.1(B)(12)

The defendant objects to the 2-level enhancement in ¶128 that he "maintained a premises for the purpose of manufacturing or distributing a controlled substance" as the facts of the case do not support this enhancement.

The "drug-house" or "premises enhancement "applies to anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). It is not disputed that the defendant had a possessory interest in his home. Thus, the principal question is whether Mr. Cartwright maintained the residence "for the purpose of manufacturing or distributing" controlled substances. *United States v. Uminn*, 820 Fed. Appx. 353, 356-357, 6thCir., (2020).

The offense conduct is set out in ¶¶30-64. Only in ¶47 is Mr. Cartwright's home or premises mentioned and concerns the search of the home on December 1, 2022 in which 9 pounds of marijuana was located. Any other drug related activity in the PSIR either does not relate to Mr. Cartwright or concerns drugs found in an apartment that Mr. Cartwright rented to

11

James Moore and was located in the business Mr. Cartwright owned, Auto Den.¶48. There is no indication in the report that any manufacturing, sales or distribution of the marijuana took place at Mr. Cartwright's residence or place of business. Mr. Moore is responsible for the drugs that were found in the apartment he leased from Mr. Cartwright.

Mr. Cartwright's situation is akin to that of the defendant in *United States v. Whiteside*, 747 Fed. Appx. 387, 395, which ruled that a lack of evidence of drug related activity at Mr. Whiteside's residence did not support such an enhancement. The paucity of evidence in *Whiteside* is similar to that in the instant case:

> "The government's case regarding the Kelton Avenue residence suffers from a different problem—failure to show more than the act of distribution from the premises. Proof of one drug transaction inside the home and another drug transaction on the street nearby, without more, does not sufficiently establish that drug activity was a primary use of the premises. *See Johnson*, 737 F.3d at 448 (drug distribution must constitute a "significant or important reason for which [the defendant] maintained his home rather than a mere incidental or collateral use" (citation and internal quotation marks omitted)). *United States v. Whiteside*, 747 Fed. Appx. 387, 395, 6th Cir. (2018)

In making its determination whether the enhancement applies, the court should consider how frequently the premises was used by Mr. Cartwright for manufacturing or distributing a controlled substance and how frequently the premises was used by him for lawful purposes. *United States v. Davis*, 815 Fed. Appx. 908, 916, 6th Cir. (2020). In the *Davis* case, the defendant made daily phone calls inviting people to come to his house to purchase drugs. Per Mr. Cartwright's PSI report, no drug activity took place at the residence or place of business other than as set forth above.

Additionally, Mr. Cartwright had a job and a legitimate source of income unlike the situation in *United States vs Bell*. In *Bell*, for instance, the court observed: "From January 2011 to October 2012, Bell had no job other than cooking crack cocaine and selling it. He cooked the cocaine in the kitchen of his house." *United States v. Bell*, 766 F.3d 634, 637 (6th Cir. 2014). The

12

*Bell* court held that the enhancement applied: "We assess the primary or principal use of the home, or some part of it, by comparing the frequency of lawful to unlawful use. At bottom, the question is whether Bell's home "played a significant part" in distributing drugs. *United States v. Bell,* 766 F.3d 634, 637, (2014). The court in Bell held that the enhancement applied based on the fact that Bell's home played a significant part in distributing drugs.

In *Davis* the record was replete with proof of *many* drug transactions within the home and the court held "As we have seen, the record is replete with proof of *many* drug transactions within the home. Thus, there is "more," which militates toward a finding that the premises enhancement should apply." *United States v. Davis*, 815 Fed. Appx. 908, 917-918, 6th Cir. (2020).

Here the record suffers from a paucity of proof of any drug activity in the premises on any day other than on one day when the search warrant was executed. Cartwright's premises did not play a "significant part in distributing drugs", *Bell*, and the enhancement should not apply.

Based on the above, the 2-level enhancement for maintaining a premises for the purposes of distributing controlled substance should not apply.

## CORRECT SCORING OF THE SENTENCING GUIDELINES

Based on the above, the correct scoring of the guidelines in the presentence investigation report is as follows:

**Count Group 1: Conspiracy to Distribute and Possess with Intent to Distribute cocaine:**

    126. Base Offense Level     24

    127. Specific Offense Characteristics:     0

    128. Specific Offense Characteristics:     0

    129. Victim Related Adjustment:     0

| | | |
|---|---|---|
| 130. | Adjustment for Role in the Offense: | 0 |
| 131. | Adjustment for Obstruction of Justice: | 0 |
| 132. | Adjusted Offense Level: | 24 |

The scoring of the guidelines in regards **Count Group Two: Engaging in a Monetary Transaction in Property Derived from Specified Unlawful Activity**, as set forth in ¶¶133-139 are accurate with the exception of the "Adjusted Offense Level" set forth in the subgroup, which should state 26 versus 30.

| | | |
|---|---|---|
| 140. | Greater of the Adjusted Offense Levels Above: | 26 |
| 141. | Increase in Offense Level: | 0 |
| 142. | Combined Adjusted Offense Level: | 26 |
| 143. | Chapter Four Enhancements: | 0 |
| 144. | Acceptance of Responsibility: Mr. Cartwright exercised his right to trial in Docket Number 1:20-cr-189-2. However, Mr. Cartwright clearly accepted responsibility by pleading guilty in a timely manner in 1:21-cr-0069 but is ineligible to receive a 3-level reduction pursuant to USSG3D1.3 | 0 |
| 145. | Total Offense Level: | 26 |

187. Guideline Provisions:  Based upon a total offense level of 24 and a criminal history category of I, the guideline imprisonment range is 63-78 months.

The defendant also objects to the conclusion reached in ¶217 and believes there are factors that may warrant a sentence outside of the advisory guideline range. This issue will be dealt with in the anticipated filing of the Defendant's Motion for a Downward Variance

Dated:  December 30, 2022                             /s/*Richard E. Zambon* P31927
                                                                              Richard E. Zambon, PLLC
                                                                              PO Box 513
                                                                              Cannonsburg, MI 49317
                                                                              (616) 299-2486
                                                                              rick@zambonlaw.com